Good morning, everyone. The first argued case this morning is No. 15, 1932, Melchior v. Hilite International. Mr. DiMatteo. Thank you, Your Honor. May it please the Court. The District Court committed reversible error when it construed Melchior's claims too broadly to allow the use of an external power source, such like the Hilite's oil pump, to vary the position of the cam phaser. Melchior essentially agrees. He states that his invention is different from the prior art because it uses torque reversals alone without an external power source. That's on page one of his brief, page three, throughout his brief. He concedes that. Recognizing that he can't support or defend the Court's overbroad claim construction, he sets up a straw man. He says that Hilite advocated to the District Court that the mere presence of an oil pump in a car engine precluded infringement. That was not true. As we cited in our brief, in our claim construction briefs, our joint claim construction chart, and at oral argument in front of the judge, Hilite always has maintained that Melchior's claims must be construed to prohibit the use of an external power source. And that's the limitation that the District Court refused to accept. It clearly said, I am not going to read the claims, construe them, as prohibiting the use of an external power source. Post-trial, the error became clear to the District Court, but it concluded that the factual stipulation of non-infringement somehow cured the wrong claim construction. How do you know, how do we know what the jury considered with respect to the stipulation? We don't know what they actually thought in the deliberation, but what we do know is that they're presumed to have followed the Court's instructions. And the Court's instructions in this case... How do you know? Because that's the law in the Fifth Circuit, that appellate courts, looking at a jury decisions, are presumed that jurors must follow the Court instructions. If we don't have that system of review, then anything is possible, Your Honor. But here, it's clear. The Court instructed the jury, the legal instructions were, you must follow my claim constructions, factual stipulations, evidence that you can either accept or reject. Wasn't there a theory of infringement that was presented to the jury that would have found infringement notwithstanding the power source? Yes, Your Honor. Well, if that theory was presented and the jury believed it, then why wouldn't that be sufficient? It's not sufficient because at the same breath, Melchior said you can ignore the stipulation. Its expert witness told the jury that you can find infringement while the pump is still operating.  So, in this case, and we don't even have to get to jury confusion, in this case, the jurors could have accepted our argument. We presented in our case that Highlight is always using an oil pump to vary the position of a cam phaser, and at times, it combines it with a torque reversal. Melchior agreed, but said, well, perhaps for a fraction of a second, the pump is off and there's infringement. What is a fraction of a second within a fraction of a second? Isn't it like an oscillating thing? I mean, the valve is opening and closing faster than your eye can see it? Exactly, Your Honor. So, it's closed for a millisecond, but it's a millisecond within a second. So, if you took over a period of an hour and you asked how long was the valve closed, it might have been two minutes, three minutes, something like that? Over an hour? Over an hour, perhaps. Then it would be two or three minutes of time during which there would be infringement. No, there wouldn't. Because there would be no exterior power source, nothing coming in from the exterior during that time. No, because it's never closed when the B1 check valve was open, and that's clear. Because if that happened, the phaser becomes uncontrollable. It's designed to operate with an oil pump throughout. It's designed that way. And Highlight realized, in fact, we have an exhibit. Right, but that was a disagreement between the experts. That's what your experts said and their experts said, no, that's not so. So, the question is, now we're going to whether they proved that opposite theory. And they didn't, because there's no evidence that the B1 check valve is open and the pump check valve is closed at the same time. But even if there was, that decision was taken away from the jury, because the claim construction doesn't preclude that. The claims are broad enough to read on our non-infringing hybrid mode. And we'll never know because of that incorrect claim construction. Now, the record on this case also supports a finding for invalidity. And I want to turn briefly to the Dankert reference. The only question is whether this court can look at these claims and construe them as requiring direct transfer in a closed line. There's no dispute that the Dankert reference is identical to Melchior's patent. It uses torque reversals alone to vary the cam phaser. Full stop. The only defense that their witness argued was that it doesn't disclose direct transfer in a closed line. Now, on appeal, Melchior argues that his claims contemplate that limitation. Contemplate. However, the claims do not recite that limitation. The specification does not use direct transfer in a closed line at all. In fact, I submit the word direct transfer closed line is nowhere to be found in the specification. And the claim construction... But it's found in the district court's explanation of the interpretation given to the oppositely acting first and second means. Right? What the district court says there doesn't say anything about closed line. I'm looking at page 4388 in the record. Yes. Where the judge is setting forth the claim construction with regard to the opposite acting first and second hydraulic means limitation. And it's clearly in the interpretation they're giving there's nothing about direct transfer. But when she explains it at 4388, she says a phase shift occurs when there is a direct transfer of hydraulic fluid from one chamber to the other. Certainly, that is possible. And what the court is saying that that's how the phase can change with a direct transfer. But nowhere do the claims or the court... The jury was not instructed that way. Not at all, Your Honor. Was not instructed or the claims support that that's a requirement. But these claims are so narrow as to require direct transfer in a closed line. It's not there. And that makes sense because when you read the specification... Wasn't there testimony in front of the jury that if direct transfer is not required, then Dankert reads on the patent? Yes. Anticipates it? Yes. That was their only defense to validity was to argue that there's direct transfer in a closed line. Full stop. So for this claim... Well, it's already a closed line. Isn't your adversary arguing that the patent is limited to a closed line? Exactly. But it's not. If you can conclude that these claims are not restricted to a closed line, automatically these claims are invalid in view of Dankert. If we also agree that direct transfer isn't a requirement of the claim, right? It didn't get to the jury as two separate components. They're looking to try to bifurcate the two. I'm taking the 102 argument as being pitched to us on this appeal. And your adversary's view is that you need a closed line and a direct transfer. Right. And your argument is that the patent isn't limited to a closed line and that Dankert isn't limited to a direct transfer. Right. And you can get there in either way. I understand your point, Your Honor. Even if you construe these claims, there's no support to construe these claims as requiring even a direct transfer. Did they ask for such a construction? No. And the reason they didn't ask for it is because Dankert came into the case after the claim construction process. And what happened, the full impact of this overbroad claim and Dankert was upon the district court at summary judgment. And we put the issue to the court. How can they argue that Dankert is not invalidating and still argue for infringement? Because the claims aren't that way. Because broadly construed, they would read on our hybrid mode, which they don't want to do. And that's how the stipulation came to be. So there was never a time for the court to consider. It was never actually argued to her other than in post-trial briefing when it became apparent in trial that that's how they were going to distinguish Dankert, direct transfer in a closed line. And the court basically punted on the issue. Judge Lind did not re-review her claim construction. She said, well, there was enough expert dispute. But the issue before this court is clearly just one of claim construction. If you agree with Melchior that these claims require direct transfer, direct transfer in a closed line, then he wins. But I submit there is no support in the record for that claim interpretation. The specification is simply sound. The closest Melchior comes to trying to get you there is to argue that, well, without direct transfer in a closed line, you may have cavitation. But the problem with that is when you read the specification, cavitation is solved by opening the line and connecting it to the pump. And that's at column six, lines 10 to 17. It says, cavitation is solved by attaching to an external pressure and opening the line. Put into communication to the unidirectional circuits through check valves, a pump having a low pressure. That's identical to what Dankert does. So there is no way you can construe these claims as requiring direct transfer, let alone direct transfer in a closed line. And you argued this to the jury, I assume. We did. And what is your understanding of where, in your view, the jury went wrong? The jury was misled by the expert witness. And the closing argument, they said Dankert does not have direct transfer. But did your witness set it straight? Exactly. Our expert, Dr. Smith. But the jury didn't agree. How are we to second guess all this? Because it was a claim construction. What was argued to the jury was that Melchior's claims required direct transfer in a closed line, and they don't. And that's where the jury went wrong. Well, is it an oversimplification to say that, agree with you, we must agree that the jury did not consider the stipulation? No, Your Honor. The stipulation is not relevant to the anticipation. It's not relevant to anticipation. But on the issue of infringement, it's not relevant either. Because the claims are too broad, and Melchior agrees, that took the decision away from the court. And I just want to talk on that briefly before I sit down. I want to come back to that point. The jury could have agreed with us that our pump worked all the time and disagreed with Melchior's theory that the pump was closed for whatever time, well, a B1 check valve is open. But they had to follow the jury's instructions in finding the court's claim constructions and find infringement. They simply had to. And to argue for Melchior can argue that they follow the stipulation when his own expert disagrees. So your view is that there's no argument that they could make if the proper claim construction were in play? Yes, for both. So you're saying that their theory of infringement under the proper claim construction is not something they would be entitled to present to a jury on a remand? They would, Your Honor. Well, that's what I'm trying to get at. If you take 102, if you went on 102 cases over and you go home happily, if 102 doesn't go your way, if we were to decide that the claim construction was wrong and that the jury should have been told that there's an extra limitation to claim no exterior pump, that would suggest to me under our case law you'd send it back for another trial. The short answer is yes, Your Honor. That would be the default. But I submit to you that you would still need to look on the issues on this appeal whether that would be enough. What I was getting at was there was a theory presented of infringement. Two theories. One of them, you knock out on a motion and eliminate. And the second theory of infringement, even if claim construction had been the other way, you're telling me here at oral argument, well, that doesn't work. I'm not certain the jury ever really got its hands on a full explication of that theory for how many milliseconds it could have been infringing. Exactly. At the very least, it's a remand if you agree that. We have case law that you can have infringement for a second or two. We have some pharmaceutical cases where the pill dissolved. Before it dissolved, it was infringed. I understand that law completely. It only just invites a second inquiry. And that is whether taking a look at what evidence Melchior actually tried to introduce to show that the pump was closed. And there's only two documents in this case that talk about the pump and the B1 check valve and they work together. One is a test on the valve alone that, yes, you could physically make that happen. You could put enough oil pressure through the B1 to close the pump check valve. We never disputed that. But the second one was when that actually happened during operation, Highlight lost control of its phaser. Let's hear from the other side. We'll save you a little time. Thank you, Your Honor. Mr. Sanfilippo. May it please the court. Good morning, Your Honor. Steve Sanfilippo for Appley. Gene Melchior. I'd like to take the negative limitation on the pump first. Well, let's talk about Dankert first. Sure. So why doesn't Dankert anticipate? Your theory, your expert's theory, is it doesn't show direct transfer over a closed line, right? That and the structure that Dankert uses. Dankert transfers from one chamber to an open central cavity. Wait, wait, wait. I thought your expert said explicitly that it doesn't anticipate because it doesn't show direct transfer over a closed line. And I believe he also testified that the structure is different as well. It uses that central cavity, which is always open to a pressure source. Well, that's the same thing as direct transfer, isn't it? Well, A. He's saying because it uses the reservoir, it's not direct. The fluid goes from A into reservoir out into B. Yes, Your Honor. So where did you argue that direct transfer over a closed line is a claim limitation? I don't know that it's a claim limitation. It's a difference between Melchior's patent and Dankert's patent. You have to have a closed. That's the entire purpose of Melchior's patent is that direct. Do you agree that it's not a claim limitation? No, I don't. I don't necessarily agree it's not a claim limitation. Well, is it a claim limitation? It's not an explicit claim limitation. Oh, wait a minute. You use the word contemplate in an educated way at page 57 of your brief where we're talking about a direct transfer in a closed circuit. You say the court's claimed constructions contemplated a direct transfer. That's at page 57 of your red brief. Yes. Your adversary put his finger on that when he stood up. There's a difference between a claim construction holding or stating and something that a claim construction may have contemplated as a possibility but not as a requirement. I think this is the point Judge Dyke is asking as well. Yeah, right. The patents and the district court's claim construction contemplated a direct transfer of fluid from one phaser chamber to the other. There's a difference between contemplating something as a possibility and requiring something. If the claims don't require, right? Right. If the claims don't require a direct transfer in a closed system that could permit it, then the claim would read on a system that allows for a direct transfer in a non-closed system. I think that's what Judge Dyke was asking. Unless you can show that the claims are restricted either to a closed system or to direct transfer, then how do you get around Denford? There's no question he is limited to that direct chamber B to A transfer. Wait, wait. I don't understand. Are you saying it is a claim limitation? It's at least contemplated in the claim. Well, that's different. In order to say that Dankert doesn't read on this, the direct transfer over a closed line has to be a claim limitation, doesn't it? And that is Melchior's claim. That is the difference between Melchior and Dankert. But you never argued that that was a claim limitation.  That was certainly contemplated in the district court's claim construction when she construed the claim to require not only just the chambers but the circuitry going directly from those two chambers. But the jury was not instructed that direct transfer over a closed line is a requirement, right? Well, they essentially were with the stipulation. What stipulation? The stipulation that says that there is no infringement any time that the pump is open and providing fluid to the chamber. What's that have to do with direct transfer over a closed line? Because if the pump is open, if the P-check valve is open to the phaser chambers, then there's no direct transfer. There's an opening, right? That's it? No direct transfer. Why no direct transfer? There maybe is an assist. But the question is whether or not you're having a corresponding transfer from A to B. A empties and B fills. And in Dankert, A empties and empties through a reservoir and fills in B. Right. It just seemed to me that when I'm looking at the claim construction, it's at 4387 in our appendix where this particular limitation has been construed. And the judge says oppositely acting first and second hydraulic means, means a volume change in one hydraulic means results in an opposite volume change in the other hydraulic means. It doesn't say it results indirectly. It just said it results. It would seem to me it would be broad enough to include an, quote, indirect transfer as well as a direct transfer so long as the volume that's in A is being transferred correspondingly into B. But when you include the circuitry and the fact that the check valve has to be closed, the only way to transfer is that direct line from chamber to chamber. You can't make the chamber any other way. That doesn't mean that that's part of the claim limitation. Your witness Hollander on 7597 in response to a question using the actual claim language says that Dankert discloses oppositely acting first and second hydraulic means, right? Yes, but he also testified that he did it in an open system. Yeah, but that's adding a claim limitation. That's the problem. And that's Melchior's claim is limited to that direct transfer. And, in fact, that is what highlights on counsel at the claim construction hearing recognized. Come back for a moment, if you would, sir, your adversary's position about what happens in the Fifth Circuit said that the jury is obligated to follow the charge as given, right? They are. The literal charge as given. And the charge as given didn't include a contemplation of a direct transfer. The charge as given didn't say anything about direct or indirect, thus including both. But there was no evidence presented to the jury that would have allowed them to find that a non-direct transfer constituted infringement. Well, there was a colloquy in direct and redirect of your expert over this very question as to whether direct was a claim limitation. And the attorney that was examining him said, right, it's not there. So wouldn't the jury have been aware of the direct-indirect discussion, right, but then having the claim construction from the judge that doesn't allow you to use a direct transfer as a claim limitation? I think the district court made it clear several times. And, again, there was no evidence that would have allowed and nobody argued that you could have infringement without that direct transfer. That was the only evidence that was put on. But that doesn't mean it's a claim limitation. The district court did not charge the jury that direct transfer over a cloth line was a claim limitation, right? I don't believe the judge explicitly instructed them that. Well, certainly if that's the case, then how can the expert add that as a claim limitation? Well, he's not necessarily adding it as a claim limitation per se, other than that's the only way the thing works. That's what's contemplated in the patent. Between the specification, the drawings, you can't look at that and say, there's a way to transfer with the Melchior method without that closed line. That's the whole purpose of his patent. That's what differs him from Dankert. And that's certainly what the U.S. Patent and Trademark Office found on May 31, 2015, when they did a re-exam and they found, once again, that Melchior's patent is subject to patent protection. Well, maybe you could have had an argument that the claim here requires direct transfer over a closed line. But, unfortunately for you, you never made the argument. And the district court didn't instruct the jury that way. Well, I think we argued throughout trial that it was a direct transfer in a closed line. You didn't argue as a claim construction. Did you? I mean, that's the claim construction. That's the claim construction the district court gave when she talked about having to use that unidirectional communication circuit. Did you argue for that as a claim construction? I don't know that we necessarily argued for that as a claim construction. But that was the result of her claim constructions. I mean, she construed the claims to require that unidirectional circuit, which was a construction that you have to have a closed line. Without that construction, without that unilateral chamber, you don't have infringement. That was part of her claim constructions. And what's implied from that construction is it has to be a transfer in a direct line. And that's what separates it from that group. She didn't charge that effect. And on cross, when this debate was going on between Dr. Hollander and I believe Mr. DiMatteo, at the bottom, Mr. DiMatteo says to your witness, if the jurors open their book and look at the court's claim construction and do not see the word direct transfer, they'll have every reason to ignore your opinion about direct transfer because it's not required by the claims. Correct? That's his question to your expert. Answer. Well, I don't know that that's true. I think they're going to have to look at the wording of the claims and figure out themselves what the wording means. The answer of the expert was, well, direct is not there, and the judge didn't charge it, but the jury would be allowed to look behind the charge and read in a limitation. That doesn't seem like... It's not really reading in a limitation. Her claim constructions included that unidirectional circuit. That's the one. That's the closed line. Why did her claim construction do that? That seems to be an important point. Majority charge is at 8491. I didn't have that volume with me, but 8491 is where the actual charge is. 4390 is her claim construction where she instructed that the structure required is the necessary communication circuit between the two chambers. And that's the closed line. What page is this? 4390, this is her claim construction chart. 4390, which one of the... The bottom, the structure. Check valve means in an inlet line for permitting hydraulic fluid to flow only into the other first and second hydraulic means. I'm not seeing... The very last box. Function permitting hydraulic fluid structure check valves in the necessary communication circuit. That's also above that, I guess, in the... Wait, wait. Otherwise. No. Permitting flow out of one of the first or second means into an inlet line leading to the other, the first... That's just saying how the check valve works. And the necessary communication circuit. That's showing the flow pattern. Selectively permitting flow out of one or another of the first and second hydraulic... I'm sorry, where are you reading? At the top of the page. Yeah. Distributor comprising a slide, body group, spring, necessary connection. And the necessary connection comprising communication circuit in a check valve. And that is your closed line. That's your direct transfer in a closed line. It doesn't say anything about not having a reservoir. Why does that preclude a reservoir? Because the reservoir... In Dankert's reservoir system, it's an open system, right? It's always open to the pump, and you have drainage from one chamber to the center, and then filling from that pump into the other chamber. Whereas in ours, you don't have that central sump. You have a direct transfer from chamber to chamber. Which is, again, they recognized at the claim construction hearing. Highlights counsel. Melchior invented this closed-loop system that allows us to move fluid from one chamber to the other. And that's what he invented. So it's an argument they make here, but the fact is between the court's claim constructions and Melchior's patent, you can't read that patent to not require a transfer in a closed line. But that's not the issue. The issue is whether you raise the issue, which you didn't ask for this claim construction. The issue is whether the district court instructed the jury about direct transfer over a closed line, and the district court didn't. It's too late now to be arguing for a claim construction that you didn't raise earlier and that the jury wasn't instructed on. But I think her claim constructions, again, at 4390, that requires a transfer in a closed line. That's your basic argument, right? That's the basic argument. I see our light is flashing, but let's make sure we've answered all the questions that the panel may have. Okay? Good. Thank you. Thank you. Thank you very much. Mr. Connell, we'll hear from Mr. DiMatteo. Three minutes, please. I'll be brief, Your Honor. Thank you. First, Dinkert doesn't have a reservoir. Nowhere does Dinkert use that term. What have you got to say to his claim construction argument based on 4390? He's saying it's a means plus function limitation and that the earlier claim construction to which I had referred, which is at 4387, which is oppositely acting first and second for varying the position, that that was describing, in essence, the function. But the structure is important because it's a means plus functional limitation. Right. So we're under Rule 12, Paragraph 6. The Court certainly identified Circuits 18 and 19 and checked Files 20 and 21 as the corresponding structure. You'll also agree that nowhere did the Court say direct transfer in the closed line is required by that structure. They're asking you to look at that structure and say, hmm, it looks like it could have a direct transfer in a closed line. Therefore, we should limit the claims to direct transfer the closed line based on the corresponding structure. But the law of this Court is very clear that under 112, Paragraph 6, you only incorporate the structure that's required to perform the function. And equivalence thereof. And equivalence thereof. And there's no function or anything recited in the claims, in the means claims, which would require direct transfer in the closed line. That's why the specification is completely silent. It's amazing that they're saying here today that Melchior's invention somehow is direct transfer in a closed line, where the patent specification is silent about it. The closest they try to come, as I mentioned before, was this concept of cavitation. Perhaps if the claim said resisting cavitation, you could read in direct transfer of the closed line. But even there, the specification tells us no. To prevent cavitation, you have to open the line to a low pressure source, just like Dankert, so that you fill any leaked oil back in to prevent cavitation. But this, it says, into an inlet line leading to the other of the first and second. Doesn't Dankert do that? It flows into an inlet line leading to the other of the first and second hydraulic means? So Dankert has a one-to-one ratio. It has two high-pressure chambers. It doesn't have a reservoir. It has a junction, like a T-junction, which you have a base pressure applied. Let's say it's five bar. That's this connection 30 at this T-bar. Everything else is identical. And that's there just to have… I thought Dankert had a reservoir. It's not a reservoir. All it is is it's called a transverse bore that's connected to basically a pressure tank, similar to a water well system. It's oil kept under pressure, so you have a constant pressure source at that point, just like Melchior wants a constant pressure point through a pump connection to prevent cavitation. But the way Dankert operates is using torque reversals. It's pushing the oil out of chamber 15 through a check valve right into 16, through that little T-junction, and back again. It's identical to the Melchior device. And just having a little opening – it's not a reservoir – just a little opening to a low-pressure system is irrelevant to Melchior's invention and anticipatory. That's why they can't explain to you where in their claims you could read in direct transfer. What is the purpose in Dankert of having that opening that you referred to? What that does – if you have a hot water system at home, you have water pressure, it's kept at a base pressure. If you're hard, you're diastolic, you'd have a base pressure. It's there to put a base pressure in the system for the hydraulics to prevent – it's really to prevent cavitation. And Melchior actually tells us that, again, at column six. He says, look, this is figurative. Figure three is sort of an ideal world. When you have a leak, you're going to have cavitation. The pressure is going to drop. So you want a low-pressure connection point just to keep enough pressure in the system so it doesn't cavitate. So even Melchior says, look, you've got to open my lines to a low-pressure system to connect it. And that's exactly what he says. We need to move on. Anything else you need to ask? Just one short statement, Your Honor. We're celebrating the 130th anniversary of White v. Dunbar, which says you cannot twist the claims like a nose of wax. That's exactly what's happening here. Thank you very much. Thank you. Thank you both. The case is taken under submission.